ROSE A. KING, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 16999.

Court of Claims, May, 1922.

**Claims against state — injuries to passenger in automobile — washout in state highway — failure to put light on barrier — where machine goes through railing because of driver's fault there can be no recovery against the state.**

At about five o'clock in the afternoon of November 7, 1920, the claimant was a passenger in an automobile driven by another person east on a county highway in Erie county across Stony Brook bridge at a point about five miles beyond

44

it. The bridge was at the foot of the hill, the road descending to it from the east at a grade of seven and ninety-one one-hundredths per cent. Just west of the bridge the road curved to the south and on the north side of the road about fifty feet west of the bridge there was a guard rail and immediately beyond it an embankment three or four feet high. The brook having in the preceding July washed out part of the road adjoining the bridge on the west to about half its width, the town superintendent of highways erected a railing around the hole, fenced it off and left about eight feet for traffic. He then placed planks across the latter part of the highway extending from the bridge several feet west and placed gravel in the road at each end of the planks to make a smooth surface. When the automobile and its passengers returned over the same road at about six o'clock of the same day there was no light at or near the bridge though darkness had set in. The car crossed the bridge, passed over the plank, crashed through the guard rail, ran down the embankment and turned over causing personal injuries to claimant. *Held,* that the physical conditions did not constitute negligence on the part of the state either in the making of the temporary repairs or their maintenance.

While the absence of a warning light at the obstruction was negligence on the part of the state, it was not a cause of the accident and had no part in the result.

Though the driver, who was not called as a witness, stated an instant before the accident, " We are coasting now and saving gas," it was evident the car was not within her reasonable control for instead of turning to the left after crossing the bridge, she kept the car straight ahead and through the guard rail. *Held,* that claimant's injuries resulted solely from the negligence of the driver and the claim will be dismissed.

CLAIM for injuries sustained on highway.

*Shire & Jellinek* (*James M. H. Wallace,* of counsel), for claimant.

*John H. Clogston,* deputy attorney-general, for state of New York.

CUNNINGHAM, J. At about five o'clock in the afternoon of November 7, 1920, the claimant was a passenger in an automobile driven by one Ruth Jensen, east on county highway No. 924-B in Erie county, across Stony Brook bridge to a point about five miles beyond the bridge. About six o'clock of the same day they returned over the same road. The Stony Brook bridge was at the foot of a hill, the road descending to it from the east at a grade of seven and ninety-one one-hundredths per cent. Just west of the bridge the road curved south. On the north side of the road about fifty feet west of the bridge stood a guard rail, and immediately beyond it an embankment three or four feet high. In July preceding the brook had washed out part of the road adjoining the bridge on the west to about half its width. The town superintendent of highways erected a railing around the hole, fencing it off and leaving a width of eight feet for traffic. He then placed planks across the latter part of the highway extending from the bridge several feet west, and placed gravel in the road at each end of the planks to make a smooth surface. On their return darkness had set in. There was no light at or near the bridge. The car

crossed the bridge, passed over the planks, and then ran through the guard rail, down the embankment, and turned over, causing injuries to the claimant, which we find damaged her $1,000.

At the outset the attorney-general denies that this is a claim of which we have jurisdiction or in relation to which the state has waived its immunity from liability. Unless there is such a statutory waiver there can be no recovery. *Smith* v. *State of New York*, 227 N. Y. 405. The statute applicable is the Highway Law, section 176, which, on November 7, 1920, and until amended March 30, 1922, read: " The state shall not be liable for damages suffered by any person from defects in state and county highways, except such highways as are maintained by the state by the patrol system,  *  *  *." The amendment limits the state's liability to damages suffered between May first and November fifteenth and to such highways as are maintained by the state " under such system as the commissioner of highways may adopt pursuant to section one hundred and seventy." Laws of 1922, chap. 371. Was this road " maintained by the state " within the provision of section 176 of the Highway Law?

The work of construction, under the state improvement, was effected by contract a few weeks before the accident. On October 16, 1920, the division engineer wrote the assistant engineer in charge of maintenance for that territory as follows: " This is to advise you that contract for the construction of C. H. 924-B has been accepted by the Commission. The road is now turned over to you for maintenance." This letter was received October 18, 1920. On October 27, 1920, the assistant engineer forwarded to the commissioner an order requesting authority to expend money for maintenance purposes on this road. The commissioner approved it, and on November 5, 1920, it was approved also by the state comptroller, and so approved was received by the assistant engineer November 9, 1920. The first work actually done on the road by the state was November 9, 1920. Formerly the patrol system was administered by individual patrolmen; in 1921 it was operated by the so-called " gang system " almost exclusively. The administration of the highway department in Erie county, and elsewhere, under the division engineer, was divided into two forces, one in charge of construction and the other of maintenance. The statute does not define what constitutes " maintenance by the state " and exactly when such maintenance begins. It leaves it to be determined as a matter of fact from the circumstances. The claimant contends that the evidence related constitutes this highway one so maintained, for negligent defects in which the state has waived its immunity from liability. The state urges that for

the statute to become effective, "the act of maintaining the highway must have been actually commenced," meaning that physical work upon the road must have begun.   Until the state's liability attaches, it is obvious that liability is on the contractor who constructed the road, or the town, or there is no liability.   It is equally clear that neither the town nor the contractor could be held liable for subsequent negligent maintenance, after the state commissioner formally accepted the road and turned it over to the maintenance division.   It would be unreasonable to construe the statute in such manner that there would be no liability at all to a person so injured.   *Borden* v. *State of New York,* 113 Misc. Rep. 232, 237.   While other facts and circumstances may be sufficient to establish " maintenance by the state " under the patrol system or other adopted system, we are of the opinion that the formal, written acceptance of the contract and turning of the road over to the maintenance division for care under its then existing patrol system, marks the road from that time as one so maintained within the statute.   The unsoundness of the state's contention readily appears. The negligence constituting the gravamen of a claim might be negligent omission by the state to do the work necessary to remedy a dangerous defect in a highway accepted and turned over to the maintenance division for care.   Yet, on the state's theory, its very negligence would constitute a complete defense to the claim and would prevent the just waiver of its immunity from liability made by the statute from being effective.   In fact, that would be the situation in the case at bar, if the claim were in other respects valid.

We have not the testimony of Ruth Jensen.   The cause of the accident must be inferred from the other evidence in the case.   The washout was not due to negligence.   Temporary repairs were made and maintained with reasonable care and were reasonably safe. At least, the claimant has failed to indicate any respect in which they were unusual or defective, except in her claim that the road surface was uneven or bumpy.   The preponderance of evidence establishes that it was not unreasonably so and that the unevenness was very slight and was remedied several times each week or daily by the town superintendent.   The clearance for traffic was eight feet wide and the accident was not due to that condition; the car passed through it safely.   We conclude, therefore, that the physical conditions constituted no negligence, either in the repairs or their maintenance.   The absence of a warning light at the obstruction, while negligence of the state, was not a cause of the accident.   It had no part in the result.   Miss Jensen and the other occupants of the car knew of the conditions at the bridge, having passed it shortly before; the headlights were lighted, and the obstruction

was visible from a point fifty or sixty feet to the east. The claimant's witnesses testified that, in fact, she slackened the car's speed on approaching it. The state was free from any negligence which caused or contributed to claimant's injuries. The evidence establishes no contributory negligence in the claimant nor any imputable to her. *Flanagan* v. *N. Y. Central & H. R. R. R. Co.*, 70 App. Div. 505; affd., 173 N. Y. 631; *Halsey* v. *Rome, W. & O. R. R. Co.*, 12 N. Y. St. Repr. 319; affd., 113 N. Y. 622. We conclude that the claimant's injuries resulted solely from Miss Jensen's negligence in the control and operation of the car. A car properly driven, by a driver with knowledge of the conditions existing, would have passed without any difficulty. The testimony of claimant's witnesses that the car was proceeding at between three and fifteen miles an hour is not convincing. We give more weight to the fact that it crashed through the guard rail fifty feet beyond the planking, ran down the embankment and turned over, and to the statement made by Miss Jensen an instant before the accident, " We are coasting now and saving gas." It is evident that the car was not within her reasonable control, and that, therefore, instead of turning to the left after crossing the bridge, it kept straight ahead through the guard rail. This is particularly understandable if, by " coasting " she meant that she was descending the steep hill with clutch out, or 'gears " in neutral."

The facts preclude the claimant's recovery and necessitate dismissal of the claim.

SMITH, J., concurs.

Judgment accordingly.