Lilly P. Armstrong, as Administratrix of the Estate of Paul E. Armstrong, Deceased, Appellant-Respondent, *v.* Richard F. Bacher et al., Respondents-Appellants, and County of Erie, Respondent.

Fourth Department, July 9, 1952.

*Edward H. Kavinoky* for appellant-respondent.

*Kenefick, Bass, Letchworth, Baldy & Phillips,* for Richard F. Bacher and Camille H. Seider, respondents-appellants.

*James S. Pierce, Roy P. Ohlin* and *Frank G. Godson* for County of Cattaraugus, respondent-appellant.

*Harry J. Kelly* for respondent.

WHEELER, J. On April 7, 1948, at about 10:00 P. M., plaintiff's intestate, Paul E. Armstrong, a passenger in an automobile owned by the defendant, Camille H. Seider, and driven by the defendant, Richard F. Bacher, sustained injuries which resulted in his death the following morning. The jury returned two verdicts in favor of the plaintiff and against all defendants; one in the sum of $4,300 for conscious pain and suffering, and the second in the sum of $65,000, plus interest, for the cause of action based on wrongful death.

The accident out of which this litigation arose occurred on the Felton Bridge, jointly owned and maintained by the defendants, County of Erie and County of Cattaraugus. The center of the bridge, which extends in a northerly and southerly direction, is the boundary line between the County of Erie on the north and the County of Cattaraugus on the south. The approach to the bridge from Cattaraugus County from the south is down a steep, winding macadam road, over which the automobile was traveling in a northerly direction.

As the car approached the bridge, the driver tells us, he was traveling only thirty miles per hour in second gear, yet he lost control of his vehicle, which skidded (on the dry pavement) for a distance of 230 feet, around the turn and onto and beyond the center of the bridge. The pavement, free from ice and snow, had an accumulation of " cinders and gravel " on the surface thereof, although the " wheel tracks " were bare. The automobile hit the bridge railing on the east side of the bridge with sufficient force to wreck the vehicle and catapult the plaintiff's intestate through the windshield. The only reasonable inference to be drawn from this testimony is that Bacher was driving at a high rate of speed and failed to have his car under control as he approached the bridge. The jury was amply warranted in finding negligence on the part of the defendant Bacher which was the proximate cause of the accident.

An entirely different question arises regarding the alleged liability of the two defendant counties. The claim of concurrent negligence is predicated upon the presence of an excessive amount of cinders and gravel on the roadway and the bridge, which, it is alleged, was permitted to accumulate and remain thereon, thereby creating a dangerous hazard.

Much evidence has been offered by all parties concerning the quantity of cinders and gravel remaining on the road at the time of the accident. While the presence of gravel, as distinguished from cinders, both on the road and the bridge, has been stressed, there is no claim that the counties at any time placed gravel on the road or the bridge; nor is there any proof indicating the amount or proportion of gravel. It is admitted by Cattaraugus County that cinders are scattered on the highway when snow and ice require it. According to the plaintiff's proof, there were cinders, or gravel, in various degrees over the entire approach of the road to the bridge and on the bridge, estimated from two to two and a half inches in depth, spread generally all over the road. However, plaintiff's witness, Deputy Sheriff Becker, made it clear that the wheel tracks on both the road and bridge were free from foreign matter, and the proof offered by the testimony of witnesses for the defendant counties indicates that there was no noticeable amount of cinders and gravel on the traveled portion of either the highway or the bridge; in fact, the defendant counties offered proof to the effect that the bridge and the roadway in the vicinity thereof had been cleaned on March 26th, and that there were no cinders remaining except on the extreme edges of the bridge and the highway.

The plaintiff produced an alleged expert witness who testified that the presence of cinders and gravel, on a dry road, '' is a hindrance to traffic and minimizes the friction of the tires to the roadway surface '', but did not attempt to render an opinion regarding the particular condition existing on this road at the time of the accident, nor to testify to the type of gravel or cinder or the quantity of either used on the highway. No hypothetical state of facts was propounded to him.

Viewing this evidence in the most favorable light, we feel that the plaintiff has failed to prove any actionable negligence on the part of either of the defendant counties. Accepting the plaintiff's evidence at its face value, it discloses nothing more than the normal condition of a highway following the usual spreading of cinders to meet the hazards of winter driving. The wheel tracks were entirely bare, with the cinders strewn

about on the side of the road and some in the center, mixed with an unrevealed quantity of gravel and dirt.

To hold that the counties are expected to clear the road every time it thawed and re-cinder it every time a snow or ice hazard occurred would, in our opinion, charge them with an unreasonably harsh responsibility and risk. This would be especially true in regard to country roads existing in sparsely settled sections, such as the road in question. Under such conditions it has been held that the authorities are not required to maintain the same standard of care as would be required in respect to much traveled roads in more congested areas. (*Hooker* v. *Town of Hanover*, 247 App. Div. 623.) It has been held under somewhat similar conditions that the presence of sand and gravel on the surface of a highway was insufficient to show the creation of a condition dangerous to traffic. (*Halpin* v. *New York Rys. Corp.*, 250 App. Div. 613; *Hofstein* v. *Bronx Water Works, Inc.*, 265 App. Div. 493.)

In the performance of the duty imposed upon the counties to use reasonable care to keep their highways in a reasonably safe condition, they were not bound to exercise extraordinary care to guard against unusual accident (*Roberts* v. *Town of Eaton*, 238 N. Y. 420); nor were they bound to maintain their highways so as to insure the safety of reckless drivers. (40 C. J. S., Highways, § 254, p. 294.) In the *Roberts* case the court (POUND, J.) stated (p. 422): " The rule of duty in such cases is one of reasonableness * * * it is not incumbent on the towns to anticipate and guard against every danger that may attach to the operation of automobiles over country highways."

In our opinion, the defendant counties in this instance were not bound to apprehend or foresee that either danger or injury would result from the conditions disclosed in this record. It being unreasonable to charge the counties with such a duty, it follows that the court should declare nonliability as a matter of law. (*Roberts* v. *Town of Eaton, supra.*)

Notwithstanding the expert evidence offered on the subject, we find no dereliction of duty in respect to the various warning signs posted along the road leading to the bridge. As we view it, these alleged defective signs had absolutely nothing to do with this accident. The driver was familiar with the road; he had been over it twice on the day of the accident and, according to his own testimony, stopped at the top of the hill and shifted into second gear. Under no circumstances could it be said that the so-called improperly positioned signs could be a proximate cause of this accident. (*King* v. *State of New York*, 118 Misc.

689, affd. 206 App. Div. 653; *Shaw* v. *State of New York*, 196 Misc. 792, affd. 278 App. Div. 871, affd. 303 N. Y. 644.)

As we have indicated, there is ample evidence to sustain the finding that the driver Bacher was negligent, but we are persuaded that in view of the circumstances here revealed that the verdict in the death action is excessive. The decedent was thirty-two years old at the time of his death and was survived by his wife and two children, aged five and six, respectively. He had a life expectancy of 33.92 years. He was a clerical worker but had no regular trade or profession and during his married life he had held various positions and, according to his wife, his earnings varied; "There were times he made ninety, times he made sixty and fifty and less." For four months immediately prior to his death he had not been employed. During the previous year his wife had been employed as a secretary.

It follows that the amended judgment insofar as it awards $4,300 in the action for conscious pain and suffering against the defendants Bacher and Seider should be affirmed, with costs; the amended judgment insofar as it awards $65,000 in the death action against the defendants Bacher and Seider should be reversed on the facts and a new trial granted, with costs to the appellants to abide the event, unless the plaintiff shall, within twenty days, stipulate to reduce the verdict of $65,000 to the sum of $35,000, as of the date of the rendition thereof, in which event the amended judgment is modified accordingly, and, as so modified is, together with the amended order, affirmed, without costs of the appeal; the amended judgment and amended order in favor of the plaintiff against the defendant County of Cattaraugus, insofar as appealed from by that defendant, should be reversed on the law and facts and the complaint dismissed as to such defendant, with costs; the amended order insofar as it sets aside the verdict and grants a new trial as to the defendant County of Erie, from which the plaintiff appeals, should be affirmed, with costs,— there being no cross appeal by the County of Erie.

All concur. Present — TAYLOR, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Amended judgment insofar as it awards $4,300 in the action for conscious pain and suffering against the defendants Bacher and Seider affirmed, with costs; amended judgment insofar as it awards $65,000 in the death action against the defendants Bacher and Seider reversed on the facts and a new trial granted, with costs to the appellants to abide the event, unless the plain-

tiff shall, within twenty days, stipulate to reduce the verdict of $65,000 to the sum of $35,000, as of the date of the rendition thereof, in which event the amended judgment is modified accordingly, and, as so modified is, together with the amended order, affirmed, without costs of the appeal; amended judgment and amended order in favor of the plaintiff against the defendant County of Cattaraugus, insofar as appealed from by that defendant, reversed on the law and facts and the complaint dismissed as to such defendant, with costs; amended order insofar as it sets aside the verdict and grants a new trial as to the defendant County of Erie, from which the plaintiff appeals, affirmed, with costs.